UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 11-133-GWU

ANNE M. LUCAS,                                                                                  PLAINTIFF,

VS.                                       **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                      DEFENDANT.

## INTRODUCTION

Anne Lucas brought this action to obtain judicial review of an administrative decision on her application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

11-133  Anne M. Lucas

          in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

11-133  Anne M. Lucas

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

3

11-133  Anne M. Lucas

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Lucas, a 43-year-old woman with a high school equivalent education, suffered from impairments related to degenerative disc disease in the cervical spine, obesity, headaches, a panic disorder, bipolar disorder, and an anxiety disorder. (Tr. 11, 15). While the plaintiff would be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 13, 15). Since the available work was found to constitute a significant

11-133  Anne M. Lucas

number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 15-16). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 16).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Martha Goss included an exertional limitation to light level work, restricted from a full range by: (1) an inability to ever climb ladders, ropes or scaffolds; (2) a need to avoid hyper-extension of the neck and the back; (3) a "moderate versus marked" limitation in ability to perform activities within a schedule, maintain regular attendance, to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable length and number of rest periods; (4) a "moderate" limitation in ability to interact appropriately with the general public; and (5) a limitation to low-stress, repetitive work, non-production or quarter-type work out of direct contact with the public. (Tr. 61-62). The individual would be able understand, remember and carry out simple instructions, make judgments commensurate with the functions of unskilled work, respond appropriately to supervision, co-workers, and work situations, and deal with changes in a routine work setting. (Tr. 62). In response,

11-133  Anne M. Lucas

Goss identified a significant number of jobs which could still be performed. (Tr. 62-63). Therefore, assuming that the vocational factors considered by the vocational expert fairly characterized the condition of Lucas, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical restrictions of the hypothetical question, the undersigned finds no error. Dr. Kip Beard examined Lucas in May of 2007, and diagnosed chronic cervical, thoracic and lumbosacral pain and strain with a history of degenerative disc disease and spondylosis, carpal tunnel syndrome, obstructive sleep apnea, migraine headaches and obesity. (Tr. 340). Dr. Beard indicated that the plaintiff's ability to see, hear, speak, handle objects, sit, stand and move about would not be impaired. (Id.). The doctor opined that the claimant would be limited in her ability to perform heavy lifting and carrying, reaching, and working overhead. (Id.). The hypothetical question's limitation to light level work accommodates the heavy lifting and carrying restriction. The question did not include restrictions concerning reaching and working overhead. However, as noted by the defendant, in June of 2007, shortly after Dr. Beard conducted his examination, Lucas underwent carpal tunnel release surgery at Lexington Clinic performed by Dr. Alexis Norelle. (Tr. 654). Long-term physical restrictions were not imposed by Dr. Norelle. (Id.). Thus, the reaching limitation would not appear to remain applicable. The defendant also notes that the claimant testified that she

was able to reach overhead. (Tr. 46). Furthermore, the claimant has not argued that the omission of these factors was reversible error.

The court notes that Dr. John Rawlings reviewed the record and opined that Lucas would be able to perform light level work, restricted from a full range by an inability to more than occasionally climb ladders, ropes or scaffolds and a need to avoid concentrated exposure to hazards. (Tr. 341-350). The claimant has not argued that the omission of a restriction concerning exposure to hazards was erroneous. Lucas has actually asserted that the opinions of the non-examining medical reviewers are entitled to little or no weight. Therefore, the ALJ dealt properly with the evidence of record relating to the plaintiff's physical condition.

In assessing Lucas's mental condition, the ALJ relied heavily upon the opinions of Psychologists Ann Demaree and Lea Perritt, the non-examining medical reviewers. Each reviewer opined that the plaintiff would be "moderately" limited in such areas as performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances, completing a normal workweek and workday without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, and interacting appropriately with the general public. (Tr. 303-304, 331-332). Demaree indicated that despite her mental limitations, the claimant would be able to understand and complete simple to complex instructions, relate to

11-133 Anne M. Lucas

peers and supervisors, and adapt in a routine, non-public work setting and this opinion was affirmed by Perritt.  (Tr. 305, 333).  The mental factors of the hypothetical question were consistent with these opinions.  As previously noted, Lucas asserts that as non-examiners, these opinions were entitled to little or no weight. However, the administrative regulations indicate that "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security Disability evaluation."   20 C.F.R. § 404.1257(f)(2)(I).   Therefore, these reports provide substantial evidence to support the administrative denial decision.

Lucas argues that the ALJ erred in rejecting the opinion of Dr. Sam Welch, her treating psychiatrist at Pathways.  The plaintiff was diagnosed as suffering from bipolar disorder, post traumatic stress disorder and a dependent personality disorder by the Pathways staff.  (Tr. 685).  A number of very severe mental limitations were noted on a January, 2008 Mental Medical Assessment of Ability to do Work-Related Activities Form which was signed by Dr. Welch.[1]  (Id.).  These restrictions included: (1)  a "severely limited" ability in such areas as maintaining attention for two hour segments and completing a normal workday and workweek

---

[1] Dr. Welch's name appears on the form underneath the signature line in parenthesis. (Tr. 685).  Davika Mattox, a Pathways clinician, signed in the signature line. (Id.).  As a staff clinician, Mattox would not be an "acceptable medical source" whose opinion would be binding on the ALJ.  20 C.F.R. § 404.1513.

9

without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; (2) a "markedly limited" ability in remembering locations and work-like procedures, understanding, remembering and carrying out detailed instructions, performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances, sustaining ordinary routine without special supervision, working in coordination with or proximity to others without being distracted, accepting instructions and responding to criticism from supervisors, traveling in unfamiliar places, and dealing with work stresses; and (3) a "moderately limited" ability to understand, remember and carry out very short instructions, making simple, work-related decisions, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. (Tr. 684-685). These are far more severe mental limitations than those found by the ALJ. When presented to the vocational expert at the administrative hearing, she could not identify any jobs which could still be performed. (Tr. 63-64). Thus, the plaintiff asserts that this report strongly supports her claim of disabled status.

The administrative regulations provide that the opinions of treating sources are generally entitled to greater weight than the opinions of other sources and if well-supported by sufficient medical evidence, entitled to controlling weight.  20 C.F.R. § 404.1527(d)(2).  When rejecting the opinion of a treating source, the ALJ is required to give good reasons.  <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541, 544 (6th Cir. 2004).  The ALJ found that these restrictions were not supported by the Pathways treatment notes which in October of 2007 revealed that the claimant's attention and concentration, memory, social interaction, speech, thought, memory, psychomotor activity, insight and judgment were all unremarkable.  (Tr. 14, 701-702).  The ALJ indicated that a February, 2008 hospitalization report from the St. Claire Regional Medical Center revealed depression and suicidal thoughts but the psychiatric evaluation indicated that her thought content, insight, and judgment were normal.  (Tr. 14, 691).  These would appear good reasons to reject Dr. Welch's opinion.  The court notes Dr. Welch reported suicidal ideation when he treated her at Saint Joseph Mount Sterling in October of 2007, but the patient was alert and cooperative at that time.  (Tr. 392, 394).  Furthermore, the court finds that Dr. Welch's status as a treating source is somewhat questionable.  The Pathways notes were signed only by Mattox who indicates a referral to Dr. Welch is needed.  (Tr. 704).  Based on the current record, Dr. Welch appears to have only provided treatment to Lucas when she was hospitalized at St. Joseph

Mount Sterling. (Tr. 387-419). The plaintiff had the burden of proving her claim and should have provided more evidence relating to Dr. Welch's actual treatment of her. Under these circumstances, the undersigned finds no error in rejecting the opinion of Dr. Welch.

Lucas also asserts that the ALJ erred by failing to properly consider the findings of Dr. Martha Foster. Dr. Foster treated the plaintiff between April, 2000 and December, 2000. (Tr. 280). This was more than four years before the claimant's alleged onset date of February 10, 2005 and during a time period when she was employed as a title specialist in a bank. (Tr. 125, 160). Dr. Foster indicated that she had no knowledge of the plaintiff's current prognosis or any mental restrictions which might currently afflict her. (Tr. 281). Under these circumstances, the undersigned finds no error.

Finally, Lucas alleges that the ALJ was biased against her. The plaintiff's brief focuses on the ALJ's notation that despite her claims of taking Percocet, a drug screen was negative for opiates. (Tr. 15). The court notes that the claimant's husband filed a complaint with the Kentucky Judicial Conduct Commission concerning this issue and alleged bias based on his wife's size, due to the ALJ's references to obesity, as well. (Tr. 122-124). The husband also wrote a complaint letter to Senator Mitch McConnell concerning these issues. (Tr. 151-154). However, the undersigned notes that drug screens were negative for opiates in October of

11-133  Anne M. Lucas

2007 (Tr. 398) and February of 2008 (Tr. 689) and this fact does raise an issue concerning her credibility that the ALJ properly considered.  (Id.).  While the references to obesity were perhaps hurtful and embarrassing to the claimant, Dr. Beard did diagnose the condition (Tr. 340), and the ALJ, as fact-finder, was required to consider all issues before him.  See Social Security Ruling 02-1p.  Therefore, the court finds the plaintiff's allegations of bias on the part of the ALJ to be unfounded.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 13th day of December, 2011.



Signed By:
G. Wix Unthank
United States Senior Judge